**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

HILB ROGAL & HOBBS COMPANY

    Plaintiff,

v.                                      Civil Action No. 3:05cv574

THOMAS A. GOLUB

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the Defendant's Motion for Summary Judgment (Docket No. 25) and the Plaintiff's Cross-Motion for Summary Judgment (Docket No. 27).  For the reasons set forth below, the Defendant's motion for summary judgment will be granted and the Plaintiff's motion for summary judgment will be denied.

**STATEMENT OF FACTS**

In this action, Hilb, Rogal & Hobbs Company ("HRH") seeks vacatur of an arbitral decision involving HRH and the Defendant, Thomas A. Golub ("Golub"), arguing that the arbitration panel's decision evinces manifest disregard for the law.  In turn, Golub has counterclaimed, seeking confirmation of the arbitral decision and award.

HRH is an insurance brokerage company, and provides related risk management and consulting services to its corporate and individual clients.  In June 2002, HRH acquired Hobbs Group, LLC

("Hobbs"), which was then independently engaged in providing insurance brokerage services similar to those provided by HRH. The terms of the sale were memorialized in a purchase agreement dated May 10, 2002 ("Purchase Agreement"). At the time of the acquisition, Golub was the President and Chief Executive Officer of Hobbs, and one of the terms of the Purchase Agreement was that Golub execute an employment agreement with HRH. On May 10, 2002, Golub executed an employment agreement with HRH ("Employment Agreement"), contemporaneous with the Purchase Agreement.

For reasons not pertinent to the matter at hand, and over which there are matters of disputed fact, the relationship between Golub and HRH deteriorated over the course of the following year. Given this state of affairs, the parties sought to negotiate terms for Golub's departure from HRH. On August 5, 2003, the parties signed a severance agreement ("Severance Agreement"), under which Golub was bound by so-called non-piracy and non-raiding restrictive covenants. The non-piracy covenant prevented Golub from soliciting HRH's customers or accepting invitations from HRH's customers for the purpose of providing certain prohibited services, during the "restricted period."[1] The non-raiding covenant prevented Golub from soliciting then-current employees of HRH, Hobbs, or their affiliates, for the purpose of employing them or offering

---

[1] The terms "customer," "prohibited services," and "restricted period" were defined in the Severance Agreement.

employment with Golub or another company, during the restricted period.

The Severance Agreement contained an arbitration clause, which provided as follows:

> Any dispute or controversy as to the interpretation, construction, application or enforcement of or otherwise arising under or in connection with this Agreement, shall be submitted at the request of either party hereto for mandatory, final and binding arbitration in the City of Richmond, Virginia, in accordance with the commercial arbitration rules then prevailing of the American Arbitration Association. The Company and Executive waive the right to submit any controversy or dispute to a Court and/or jury. Any award rendered therein shall provide the full remedies available to the parties under the applicable law and shall be final and binding on each of the parties hereto and their heirs, executors, administrators, successors and assigns and judgment may be entered thereon in any court having jurisdiction. The prevailing party in any such arbitration shall be entitled to an award by the arbitrator of all reasonable attorneys' fees and expenses incurred in connection with the arbitration.

Brief In Support of Defendant's Motion for Summary Judgment (hereinafter "Defendant's Opening Brief"), Exhibit A ("Severance Agreement") ¶ 13. The Severance Agreement also contained a choice of law provision, which specified that Virginia law would govern the Severance Agreement.

Less than a year later, on June 25, 2004, Golub filed an action for declaratory judgment and injunctive relief in Georgia. See id., Exhibit B. Golub asserted that the non-piracy and non-

raiding restrictive covenants were overbroad and therefore unenforceable. HRH removed the action to federal court in the Northern District of Georgia and invoked its right to arbitrate the dispute under the terms of the Severance Agreement. The district court granted HRH's motion to stay the proceedings and to compel arbitration on August 18, 2004. Both parties filed demands for arbitration with the American Arbitration Association ("AAA") in August 2004, contesting the enforceability of the restrictive covenants and whether the covenants had been breached. See id., Exhibits C and D.

On November 19, 2004, Golub moved the AAA panel for judgment as a matter of law, seeking findings that Georgia law would govern the Severance Agreement and that the restrictive covenants were unenforceable under either Georgia or Virginia law. Golub argued that the non-piracy covenant was unenforceable under Georgia law because (1) the scope of restricted activity was too broad, (2) the restricted territory was too broad, and (3) the restricted territory was shifting. See id., Exhibit E. With respect to the non-raiding covenant, Golub asserted that the restriction was overbroad under Georgia law because it prevented Golub from soliciting any HRH employee regardless of the nature of the potential employment and regardless of the employee's current duties. In its response brief, HRH focused primarily on the choice of law issue and the question of enforceability under Virginia law,

but also argued the restrictive covenants were enforceable under Georgia law. HRH contested the claims of overbreath, and also argued for a relaxed level of scrutiny in determining the facial validity of the covenants. HRH also contended that the key inquiry was the relative bargaining power of the two parties. See Plaintiff's Memorandum of Law In Opposition to Defendant's Motion for Summary Judgment and In Support of Plaintiff's Cross-Motion for Summary Judgment (hereinafter "Plaintiff's Opening Brief"), Exhibit D.

On December 20, 2004, the AAA panel denied Golub's motion for judgment as a matter of law, holding that:

> The panel considered whether the restrictive covenants are facially invalid under Georgia law in order to determine whether the covenants violate the public policy of Georgia. The panel decides that the covenants are not facially invalid. In determining the merits of this cause at the hearing, so long as the covenants do not violate Georgia public policy, the law of Virginia will apply.

Defendant's Opening Brief, Exhibit F (AAA Order of December 20, 2004).

Thereafter, the parties engaged in discovery, including conducting depositions. The arbitration panel heard evidence on April 4, 5, and 8, 2005. At the conclusion of the hearing, the arbitration panel asked the parties to submit post-arbitration briefs, framing the issues to be decided. Given the arbitration panel's previous ruling on choice of law, Golub argued that the

restrictive covenants were invalid and unenforceable under Virginia law and Georgia public policy. With respect to Virginia law, Golub argued that the restrictive covenants were overbroad and ambiguous, and thus unenforceable. Golub also contended that HRH had failed to carry its burden in proving that the covenants were narrowly tailored to protect a legitimate competitive interest. With respect to Georgia public policy, Golub argued that the restrictive covenants were per se violative of Georgia public policy by virtue of their overbeadth. Finally, Golub argued that, even if the restrictive covenants were enforceable, he had not breached the covenants. See id., Exhibit H.

HRH took the position that the enforceability of the covenants had been decided by the arbitration panel's previous order. HRH briefly reiterated its arguments with respect to enforceability, but focused the majority of its briefing on the breach of contract issue. See id., Exhibit I.

On June 7, 2005, the arbitration panel issued its interim award. In pertinent part, the interim award stated:

1. The preponderance of the evidence establishes that section 6 (Non-Piracy) and section 7 (Non-Raiding) of the Severance Agreement by and between Golub and HRH entered into on August 5, 2003 ("Agreement") are unreasonable as applied to the facts of this case and therefore are in violation of both Virginia's and Georgia's public policies regarding restrictive covenants and employment agreements. Accordingly, they are unlawful and unenforceable.

2.  Additionally, the preponderance of the evidence establishes that Golub did not breach section 6 or section 7 of the Agreement.

3.  The preponderance of the evidence establishes that Golub did not breach any covenant of good faith and fair dealing in regard to the Agreement.

Id., Exhibit J (Interim Award of Arbitrators).[2]  The arbitration panel entered its final award on August 11, 2005, after resolving the amount of attorney's fees to be paid by HRH.  See id., Exhibit K.  HRH filed this action, seeking vacatur of the arbitration panels's decision and award.

**DISCUSSION**

**I.  Summary Judgment Standard**

Summary judgment is granted when, viewed in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See, e.g., Retail Services, Inc. v. Freebies Publishing, 364 F.3d 535, 542 (4th Cir. 2004).  The moving party bears the initial burden of demonstrating

---

[2] The arbitration panel did not issue a reasoned award because the parties did not request one before the appointment of the arbitrator.  See Reply Brief In Support of Defendant's Motion for Summary Judgment and Response Brief In Opposition to Plaintiff's Motion for Summary Judgment, Exhibit F, p.376 (transcript of arbitration hearing); AAA Commercial Arbitration Rule 42(b).

that "there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." Ryder v. Phillip Morris, Inc., 946 F.Supp. 422, 427 (E.D. Va. 1996)(citing Celotex Corp. V. Catrett, 477 U.S. 317, 323 (1986)). If the moving party meets its burden, the non-moving party must demonstrate the specific facts with respect to which there is a genuine issue for trial. Id.

## II. Vacatur of Arbitration Awards

"The process and extent of federal judicial review of an arbitration award are substantially circumscribed." Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006). Indeed, "to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all--the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998). Expanding on the policy behind the deference granted to arbitral decisions, the Fourth Circuit has noted that

> A policy favoring arbitration would mean little, of course, if arbitration were merely the prologue to prolonged litigation. If such were the case, one would hardly achieve the 'twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.' Opening up arbitral awards to myriad legal challenges would eventually reduce arbitral proceedings to the status of preliminary hearings. Parties would

8

    cease to utilize a process that no longer had finality.[3]

Remmey v. PaineWebber, Inc., 32 F.3d 143, 149 (4th Cir. 1994) (omitting internal citations and quotation marks).

 "As a general proposition, a federal court may vacate an arbitration award only upon a showing of one of the grounds specified in the Federal Arbitration Act, or upon a showing of certain limited common law grounds."[4]  Patten, 441 F.3d at 234 (omitting internal citation).  Here, HRH has not asserted any of the statutory grounds for vacatur under the Federal Arbitration Act (FAA).  "The permissible common law grounds for vacating [] an award . . . include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law."  Id. (citing Apex Plumbing, 142 F.3d at 193 and n.5).  See Upshur Coals Corp. v. United Mine

---

[3] But see Patten, 441 F.3d at 238 (Luttig, J., dissenting) (suggesting that the level of deference granted to arbitrators by the Fourth Circuit may be excessive).  Judge Luttig's observation is quite correct but so too is his related comment that only an en banc decision of the Court of Appeals can change this unfortunate circumstance.

[4] "The Federal Arbitration Act provides that a federal court may vacate an arbitration award on the following grounds: (1) the award was procured by corruption, fraud, or undue means; (2) partiality or corruption in the arbitrators; (3) the arbitrator was guilty of misconduct or misbehavior in conducting the hearing in a manner which prejudiced a party's rights; or (4) the arbitrator exceeded his powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made."  Id. (citing 9 U.S.C. § 10(a)).

Workers of America, Dist. 31, 933 F.2d 225, 228-229 (4th Cir. 1991) (discussing vacatur where award fails to draw its essence from the contract). In this case, HRH argues that the arbitration panel's award demonstrates a manifest disregard for the law. However, it should be noted that HRH has not argued that the arbitration panel's decision failed to draw its essence from the contract, nor has it contested the arbitration panel's finding that Golub did not breach the non-piracy and non-raiding covenants.

### A. Manifest Disregard For The Law

"A legal interpretation of an arbitrator may only be overturned where it is in manifest disregard of the law." Upshur Coals, 933 F.2d at 229 (citing American Postal Workers v. United States Postal Serv., 682 F.2d 1280, 1284 (9th Cir. 1982)). Indeed, "[a]n arbitration award is enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion, and may only be reversed when arbitrators understand and correctly state the law, but proceed to disregard the same." Id. (omitting internal citations and quotation marks). See also Wilko v. Swan, 346 U.S. 427, 436-437 (1953). "[A] court's belief that an arbitrator misapplied the law will not justify vacation of an arbitral award." Remmey, 32 F.3d at 149. Rather, a party seeking vacatur must "show that the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it

10

in propounding their decision." Id.  See also Lincoln Nat'l Life Ins. Co. v. Payne, 374 F.3d 672, 674 (8th Cir. 2004)("If an arbitrator, for example, stated the law, acknowledged that he was rendering a decision contrary to law, and said that he was doing so because he thought the law unfair, that would be an instance of 'manifest disregard.'").

HRH draws much of its argument with respect to the arbitration panel's alleged manifest disregard for the law from the panel's December 20, 2004 order ("December 20 Order").  In that order, the arbitration panel found that the restrictive covenants were not facially invalid under Georgia law, and ruled that Virginia law would apply unless it was determined that the covenants ran afoul of Georgia public policy.  Given this ruling on the applicable state law, HRH argues that the arbitrators were aware of the law and found it applicable to the case before them.  While the briefs submitted to the arbitration panel demonstrate that the panel was aware of the Virginia decisional law that HRH believes supports its position on enforceability of the restrictive covenants, they are insufficient to show that the arbitrators found the law applicable to this case or to reflect the panel's understanding of the law. Moreover, HRH presents nothing to suggest that the arbitration panel simply chose to ignore the controlling law in propounding its decision on the issue of enforceability.  See Remmey, 32 F.3d at 149.

Essentially, HRH argues that the arbitration panel's disregard for the law is manifest in the very fact that it ruled against HRH. HRH takes the position that, upon review of the entire record and the applicable law, it will be obvious to the Court that the arbitration panel manifestly disregarded the law. This position is directly contrary to the law of the Fourth Circuit.  Even if the Court were to review the entire record and applicable law and determine that the arbitration panel was wrong, perhaps even seriously wrong, that would not be sufficient for a showing of manifest disregard for the law.  The mere fact that an arbitration panel reached a legal conclusion in error is not sufficient for vacatur.  Moreover, the doctrine of <u>res ipsa loquitur</u> does not apply in this context.  Manifest disregard for the law is not evident on the face of an adverse legal decision.  As the Eighth Circuit has noted, "there must be some evidence in the record, <u>other than the result</u>, that the arbitrators were aware of the law and intentionally disregarded it."   <u>Payne</u>, 374 F.3d at 674 (emphasis added).  HRH is not entitled to <u>de novo</u> review of the record respecting the enforceability of the restrictive covenants, and the Court declines to undertake such a review.

The only "evidence" of manifest disregard to which HRH points, other than the result itself, is the alleged irreconcilable discrepancies between the December 20 Order and the interim award. However, the perceived discrepancies are merely the product of

12

HRH's rather remarkable misreading of the December 20 Order. HRH has asserted, in its post-arbitration brief and in these proceedings, that the December 20 Order decided the issue of enforceability in its entirety. In the view of HRH, the interim award is irreconcilable with the December 20 Order because the interim award holds that the restrictive covenants were unreasonable on the facts of this case, and therefore unenforceable. From this perceived inconsistency, HRH concludes that the arbitration panel manifestly disregarded the law.[5] However, HRH's reading of the December 20 Order misses the mark.

The December 20 Order held that the restrictive covenants were not facially invalid under Georgia law. In other words, on their face, the restrictive covenants did not per se violate Georgia public policy. The December 20 Order then made clear that Virginia law would apply to the case, unless the covenants were found to violate Georgia public policy. It could not be more clear, from a plain reading of the order, that the issue of enforceability of the restrictive covenants had not been foreclosed. The wording of the order makes quite clear the possibility that the arbitration panel could find that the restrictive covenants were invalid on the facts of the case, as opposed to the face of the covenants, and that, in

---

[5] At oral argument, HRH stated that it would not have filed an action to vacate the award if the arbitration panel had simply stated that it found for Golub. The perceived inconsistency was central to HRH's decision to seek vacatur.

that event, the covenants would offend Georgia public policy. Moreover, the pronouncement on choice of law stated nothing with respect to the enforceability of the restrictive covenants under Virginia law. The order clearly reflects that the arbitration panel had yet to decide that question.

In the interim award, the arbitration panel found that the restrictive covenants were unreasonable on the facts of the case, and therefore that they violated both Georgia and Virginia public policy with respect to restrictive covenants in employment agreements. The finding that the restrictive covenants were invalid as applied to the facts of the case under Georgia law was logically consistent with the previous finding that the restrictive covenants were not invalid on their face under Georgia law. Indeed, this is rather elementary. Furthermore, the December 20 Order made no findings with respect to the enforceability of the restrictive covenants under Virginia law, so there is no conceivable conflict between the interim award and the December 20 Order with respect to the finding under Virginia law.

HRH has simply adduced no evidence to support the conclusion that the arbitration panel manifestly disregarded the law. There has been no showing that the arbitration panel was aware of the applicable law, understood it correctly, found it applicable in this case, and yet chose to ignore it. Thus, HRH has failed to satisfy its burden.

**B. Suggested Remand for Clarification of Award**

It is undisputed that the arbitration panel was not obligated to give a reasoned award in this case. However, when arbitrators fail to explain their decisions, "it is all but impossible to determine whether they acted with manifest disregard for the law." Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir. 2000). Absent remand to the arbitration panel, "[w]hen the bases for the decision are not explained, the reviewing court must attempt to infer from the facts of the case whether the arbitrators appreciated and ignored a clearly governing legal principle." Wedbush Morgan Securities, Inc. v. Robert W. Baird & Co., 320 F.Supp.2d 123, 127 (S.D.N.Y. 2004)(omitting internal quotation marks). HRH has suggested that a remand to the arbitration panel would be appropriate if the Court is unable to infer manifest disregard for the law from the available pronouncements by the arbitration panel.[6]

The issue of remand requires a brief examination of the doctrine of functus officio. It is a "fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is functus officio and can

---

[6] At oral argument, HRH stated that it would not want a remand to the same arbitration panel, in which it has little confidence. However, only the same arbitration panel could provide clarification of the reasoning behind the award. And, indeed, sending this matter to a new arbitration panel would simply be a de novo arbitration proceeding.

do nothing more in regard to the subject matter of the arbitration." La Vale Plaza, Inc. v. R. S. Noonan, Inc., 378 F.2d 569, 572 (3rd Cir. 1967). As the Third Circuit explained, "[t]he policy which lies behind this is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion." Id. See also Teamsters Local 312 v. Matlack, Inc., 118 F.3d 985, 991 (3rd Cir. 1997). However, the doctrine of functus officio is "riddled with exceptions," and "is hanging on by its fingernails." Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union v. Excelsior Foundry Co., 56 F.3d 844, 845 (7th Cir. 1995) (collecting cases and noting that doctrine of functus officio is nearly defunct in context of labor arbitrations). See also Pace Union, Local 4-1 v. BP Pipelines (North America), 191 F.Supp.2d 852, 856 (S.D. Tex. 2002).

For example, "[a] remand is proper, both at common law and under the federal law of arbitration contracts, to clarify an ambiguous award or to require the arbitrator to address an issue submitted to him but not resolved by the award." M & C Corp. v. Erwin Behr GmbH & Co., KG, 326 F.3d 772, 782 (6th Cir. 2003) (quoting Green v. Ameritech Corp., 200 F.3d 967, 977 (6th Cir. 2000)). "[R]emand to the arbitrator is the appropriate disposition

16

of an enforcement action when an award is patently ambiguous, when the issues submitted were not fully resolved, or when the language of the award has generated a collateral dispute.  In such a case a remand is necessary to clarify precisely what the Court is being asked to enforce."  Oil, Chemical & Atomic Workers Int'l Union, Local 4-367 v. Rohm & Haas, Texas Inc., 677 F.2d 492, 495 (5th Cir. 1982)(citing United Papermakers and Paperworkers, AFL-CIO v. Westvaco Corp., 461 F.Supp. 1022 (W.D. Va. 1978)).  See also Sargent v. Paine Webber, Jackson & Curtis Inc., 674 F.Supp. 920, 923 (D.D.C. 1987) ("It is entirely appropriate for a district court to direct arbitrators to explain their awards.  This method avoids any judicial guessing as to the rationale behind the award.").  Of course, "when an award is remanded for clarification, the arbitrator is limited in his review to the specific matter remanded for clarification and may not rehear or redetermine those matters not in question."  LLT Int'l, Inc. v. MCI Telecommunications Corp., 69 F.Supp.2d 510, 515 (S.D.N.Y. 1999).

In this case, however, there is nothing ambiguous about the arbitration panel's award.  The alleged ambiguity created by the perceived inconsistency between the December 20 Order and the interim award is entirely ethereal.  Thus, remand is not appropriate.  Certainly, this case raises questions about the wisdom of allowing arbitration panels to issue awards without any sort of explanation, but that is an issue HRH should have

17

considered prior to negotiating the Severance Agreement and prior to demanding arbitration.

### C. Conclusion

The Court finds that there is no genuine issue with respect to the material facts recited above, and that Golub is entitled to judgment as a matter of law with respect to HRH's action seeking vacatur of the arbitral award. The record cannot support a finding of manifest disregard for the law by the arbitration panel. Golub's motion for summary judgment with respect to the action for vacatur will be granted, and HRH's cross-motion will be denied.

It should be noted, however, that much of this discussion is academic in light of another finding made by the arbitration panel in its interim award. The arbitration panel also found that Golub did not breach the restrictive covenants. Thus, even if the Court were to vacate the arbitration panel's ruling with respect to the unenforceability of the restrictive covenants, the alternative ruling with respect to breach would stand. HRH has not contested or sought vacatur of that portion of the award.

## III. Confirmation of Arbitration Awards

Golub's motion also seeks summary judgment on his counterclaim for confirmation of the arbitral award. The Federal Arbitration Act provides that

> If the parties in their agreement have agreed
> that a judgment of the court shall be entered

>  upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon <u>the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title</u>. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9 (emphasis added). In this case, the arbitration clause in the Severance Agreement provided that judgment may be entered on the arbitral award in any court having jurisdiction.

"In an ordinary arbitration confirmation proceeding, the Court merely converts an arbitration award into a final judgment. The Court does not substantively resolve a particular dispute." <u>Farmers Crop Ins. Alliance v. Laux</u>, 422 F.Supp.2d 898, 899 (S.D. Ohio 2006). <u>See also</u> <u>Arbitration Between Westchester Fire Insurance Company v. Massamont Insurance Agency, Inc.</u>, 420 F.Supp.2d 223, 226 (S.D.N.Y. 2005). "The core question is whether the parties agreed to arbitration as a binding process, one that would bar litigation, or whether the agreement to arbitrate was simply a dispute settlement process that was a condition precedent to litigation." <u>Rainwater v. National Home Insurance Co.</u>, 944 F.2d 190, 192 (4th Cir. 1991). "Where there is an agreement to binding arbitration, the court must grant the order unless the award is vacated, modified, or corrected." <u>Choice Hotels Int'l, Inc. v. Green Valley Motels, Inc.</u>, 195 F.Supp.2d 739, 740 (D. Md. 2002).

19

In this case, there is no doubt that the parties agreed to arbitration as a binding process.  This point is not in dispute.  Indeed, the arbitration clause in the Severance Agreement states that arbitration shall be "final and binding," and contemplates that a judgment maybe entered upon the arbitral award.  Given that the arbitral award has not been modified or corrected under 9 U.S.C. §§ 10 or 11, and that the Court has granted summary judgment against HRH and for Golub with respect to vacatur under the common law, it is plainly appropriate to confirm the arbitral award.  There are no genuine issues of material fact in dispute, and thus Golub is entitled to judgment as a matter of law.  Golub's motion for summary judgment, seeking confirmation of the arbitral award under 9 U.S.C. § 9, will be granted.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket No. 25) will be granted and Plaintiff's Cross-Motion for Summary Judgment (Docket No. 27) will be denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

                                                          /s/
                                      Robert E. Payne
                                      United States District Judge

Richmond, Virginia
Date: August 18, 2006